Filed 6/18/21 In re D.C. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.C., a Person Coming Under the Juvenile Court Law. | B309096 |
| DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP04591A) |
| Plaintiff and Respondent, | |
| v. | |
| DERICK C., | |
| Defendant and Appellant. | |

APPEAL from findings and order of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge. Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel for Plaintiff and Respondent.

Derick C., Sr. (father) appeals jurisdictional and dispositional findings and orders as to his son, Derick C., Jr. (Derick). Derick was declared a juvenile court dependent and removed from his parents' custody after his mother, S.H. (mother), suffered a drug overdose. Although father does not challenge the juvenile court's findings that mother's substance abuse put Derick at risk of harm, he contends there was not substantial evidence that *he* failed to protect Derick, and the juvenile court abused its discretion by removing Derick from father's custody and requiring father's visits to be monitored.

We affirm. As we discuss, there was substantial evidence that father was aware that mother was taking more narcotics than she had been prescribed and, in fact, that father provided mother with additional narcotics. There also was substantial evidence that father himself smoked marijuana daily, used alcohol regularly, refused to drug test, and engaged in domestic violence with his romantic partners, including mother. Under these circumstances, the juvenile court acted well within its discretion in finding that father failed to protect Derick, ordering Derick removed from father's physical custody, and limiting father to monitored visits.

## FACTUAL AND PROCEDURAL BACKGROUND

Derick, who was born in May 2008, is the child of mother and father, who live separately. Prior to the events that gave rise to this appeal, Derick lived with mother and his 20-year-old half-sister, Jordyn.

### A. *Prior Child Welfare History*

In 2014, the Los Angeles County Department of Children and Family Services (DCFS) received a report that six-year-old Derick and his five-year-old cousin had been left home alone.

2

Mother said she had left the children with father while she took her two older children to a Christmas party. The allegation was substantiated for neglect by father.

In 2016, Derick told his teacher that father had hit him with a belt. Derick said father often disciplined him with a belt, father and mother hit each other, and he was afraid of father. The allegations of physical abuse were investigated but were determined to be inconclusive.

In July 2020, DCFS investigated a report of domestic violence between father and the mother of his one-year-old daughter. That investigation was closed as inconclusive.

B.  *Mother's August 2020 Drug Overdose*

On August 15, 2020, a neighbor found mother unresponsive in her parked car next to bottles of hydrocodone (Norco) and alcohol.[1] When paramedics arrived, mother's pupils were constricted and she was having difficulty breathing. The paramedics administered Narcan and brought mother to the hospital, where she tested positive for amphetamines, methamphetamines, and opiates.

The hospital spoke to Derick's adult sister, Jordyn, who reported that mother had been prescribed hydrocodone for shoulder pain, which has been a " 'problem lately.' " Jordyn said mother had been getting additional hydrocodone from father and drank a bottle of tequila every other day. Mother sometimes " 'h[u]ng out' " in the parking garage; Jordyn did not know why. She denied that mother was suicidal, and suspected an accidental overdose.

---

[1]  All subsequent dates are in 2020 unless otherwise indicated.

Mother told a hospital social worker that she did not recall what had happened before she became unresponsive. She initially acknowledged taking only one hydrocodone, "but then admitted to more but won't state how much." Mother also admitted using Ecstasy two to three times per week. When asked why she spent time in her car, she said it was the only place she could have time to herself.

Mother was discharged home on August 17. The discharge papers indicated that her principal diagnoses were drug overdose and moderate opiate use disorder, and her secondary diagnoses were acute respiratory failure, severe alcohol use disorder, and hypertension.

C.    *Detention*

DCFS filed a juvenile dependency petition on September 1, 2020. As subsequently sustained, the petition alleged that Derick was a dependent child pursuant to Welfare and Institutions Code[2] section 300, subdivision (b) because mother had a history of substance abuse and was a current user of methamphetamine, amphetamines, opioids, Ecstasy, and alcohol, which rendered her unable to provide Derick with regular care and supervision, and father knew of mother's substance abuse and failed to protect Derick.[3]

---

[2]    All subsequent statutory references are to the Welfare and Institutions Code.

[3]    In a separate count, the petition also alleged that father had a history of substance abuse and was a current abuser of marijuana and alcohol, which rendered him unable to provide Derick with regular care and supervision. The juvenile court dismissed that count on September 28.

4

On September 4, 2020, Derick was detained from mother and father and placed with his maternal grandmother. The court permitted both parents to have monitored visits with Derick, and said father could have unmonitored visits after he submitted to two drug tests that either were negative or showed decreasing levels of marijuana use.

D.  *Jurisdiction and Disposition Report*

Mother told a children's social worker (CSW) that she had been taking hydrocodone for severe menstrual cramps for the past five or six years. She admitted using Ecstasy, a stimulant/psychedelic, once or twice a week for the past seven or eight months, and drinking alcohol about once per week. She did not believe she had a substance abuse problem, and she denied ever having been in drug rehabilitation or suffering a drug overdose. She could not recall the August 15 overdose incident.

Mother initially told the CSW she was not romantically involved with father, but later said she was not sure. She said Derick saw father nearly every day.

Father said mother had taken prescription medication since he met her 13 years earlier. He estimated that she was prescribed 45 pills each month and took two pills per day. He denied giving mother any additional pills, but he said his grandmother, with whom he lived, did. Father denied knowing that mother had used Ecstasy, but said she "probably went out with some friends and tried something." He did not appear concerned about mother's drug use, stating, " 'everyone tries stuff once.' " He knew mother had passed out before being hospitalized, which he said had happened at least once before.

Father said he and mother no longer had a romantic relationship, but they got along well, looked out for each other,

5

and sometimes spent the night together. At the time of the interview, he said mother was on her way over to his house because she missed him.

Father admitted smoking marijuana every day, and said he consumed alcohol whenever he had company. The CSW detected a "strong odor" of marijuana or cigarettes in father's home, and found an empty alcohol bottle and a bong in father's bedroom. Father said he was not willing to drug test.

Father admitted having a history of domestic violence with mother and a criminal history related to welfare fraud and grand theft, for which he served 10 years in prison. Criminal history records showed father also had been convicted of misdemeanor spousal battery and misdemeanor driving under the influence.

Police call records indicated many calls for service to mother's home between May 2019 and June 2020 for domestic disturbances involving father. On November 19, 2019, police received a report that father was "under the influence of [an] unk[nown] narco[tic]" and was causing a disturbance; on April 13, 2020, police were called to mother's home because father reportedly had threatened mother with a knife and attempted to run mother over with his car; on May 26, 2020, father reportedly assaulted and attempted to choke mother; on July 6, 2020, it was reported that father slashed the tires on mother's car and attempted to break a window; and on August 21, 2020, police received a report that father was at mother's home and was "trying to fight with her."

The maternal grandmother reported that Derick had a good relationship with both his mother and father. She was concerned about mother's substance use and believed mother had become dependent on the pain medication she took for severe menstrual

6

cramps, fibroids, and a shoulder injury. Grandmother said mother had been in an outpatient drug rehabilitation program in 2018 or 2019, and that Derick reported having seen father give mother pills. Grandmother said mother and father had been in a relationship in the past, but " 'not so much now.' " She was concerned about mother and father arguing in front of Derick, which she knew affected him negatively.

Mother agreed to drug test on August 19 but did not give a sample, reportedly because she was not able to produce enough urine. Mother failed to appear for a drug test the following day.

E.    *Jurisdiction and Disposition Hearing*

At the September 28 jurisdiction/disposition hearing, Derick's counsel and DCFS urged the court to sustain the allegation of the petition, noting that mother appeared to be abusing hydrocodone, Ecstasy, and alcohol, and that father was aware of mother's drug use and may have been providing mother with additional hydrocodone. Mother and father each asked that the petition be dismissed as to them.

The court sustained the allegation of the petition alleging mother's drug use and father's failure to protect. The court found mother's substance abuse "is a long and ongoing situation," and father "on some level is a co-conspirator, if you will." It explained: "It's known to all parties this is more than just a prescription drug issue. This has gone over the line, and it appears to the court there was actual substance abuse. . . . [C]oupled with the alcohol abuse[,] this clearly is a situation where the court believes the child is at substantial risk of harm being placed with either parent."

As to disposition, the court ordered Derick removed from mother and father and placed with the maternal grandmother.

Father was ordered to submit to random or on-demand drug tests. The court said it would consider releasing Derick to father in the future, but it "does not want a bong in plain sight for a 12-year-old young man to have to see, [and] although I understand marijuana is legalized, this court has not received sufficient paperwork to indicate that [father] has been testing and has [not] shown the decreasing levels [of marijuana use] that he needed to show to this court. [¶] If he's serious about getting his son back, he will go and test and show decreasing level[s]." The court ordered mother's and father's visits with Derick to be monitored, but said that if it "gets information that [father's] marijuana levels are decreasing and with [Derick's] concurrence, the court would be willing to liberalize [father's visits] to unmonitored."

Father timely appealed from the September 28 findings and orders.

## DISCUSSION

Father contends (1) substantial evidence did not support the juvenile court's finding that he failed to protect Derick from mother's drug abuse; (2) the juvenile court abused its discretion by removing Derick from father's custody because there was not substantial evidence that Derick would be at risk of harm in father's home; and (3) the juvenile court abused its discretion by limiting father to monitored visits with Derick.

### I.
### The Failure-to-Protect Finding
### Was Supported by Substantial Evidence

Section 300, subdivision (b), provides that a child is within the jurisdiction of the juvenile court if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of

8

his or her parent . . . to adequately supervise or protect the child."

We review the juvenile court's jurisdictional findings for substantial evidence. " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) " ' "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.]" ' " (*Ibid*.)

There was abundant evidence in the present case that mother was abusing prescription and nonprescription drugs. By her own admission, mother had been taking prescription hydrocodone for many years, and her adult daughter Jordyn said mother recently had been taking more hydrocodone than she was prescribed. Jordyn also reported that mother was a heavy alcohol user, consuming a half a bottle of tequila daily, and mother admitted that she had been using Ecstasy for the last six or seven months. Mother's drug use resulted in her August 15 overdose, which required emergency medical intervention and a two-day hospital stay.

Although father appears to concede there was substantial evidence of mother's substance abuse, he urges, pointing to his own statements that he had not provided mother with hydrocodone or seen her use illicit drugs, that there was insufficient evidence that he knew of her substance abuse or

9

failed to protect Derick from it. We do not agree. Although father denied knowing of mother's substance abuse, there was substantial evidence to the contrary. Father admitted being aware both of mother's long-term use of prescription hydrocodone and that mother sought out additional hydrocodone when she ran out of what she was prescribed. There was, moreover, evidence that *father* was mother's source for additional hydrocodone: Jordyn said father gave mother hydrocodone, and Derick told his grandmother that he saw father give mother pills. Father himself admitted that mother got additional hydrocodone from his grandmother, for whom he acted as a full-time caregiver.

Moreover, although father denied knowing that mother had begun using Ecstasy, the juvenile court reasonably could have concluded otherwise. The evidence was undisputed that mother and father continued to see each other regularly, and father said they had an ongoing sexual relationship. Father had intimate knowledge of mother's life, including how many hydrocodone she was prescribed each month, the length of her menstrual cycle, and that she suffered from fibrosis and a shoulder injury. In view of father's knowledge of these private details of mother's life, the juvenile court could reasonably have concluded that father also was aware of mother's drug use, and that he failed to protect Derick from it.

## II.
### The Removal Finding Was Supported by Substantial Evidence

Section 361, subdivisions (c) and (d) govern the removal of a dependent child from his parents' physical custody. As relevant to father's appellate claims, section 361, subdivision (d) provides: "A dependent child shall not be taken from the physical custody

of his or her parents . . . with whom the child did not reside at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence that there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child for the parent . . . to live with the child or otherwise exercise the parent's . . . right to physical custody, and there are no reasonable means by which the child's physical and emotional health can be protected without removing the child from the child's parent's . . . physical custody."

"A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she [is in the physical custody of] the parent. [Citation.] 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 169–170.)

Whether the conditions in the home present a risk of harm to the child is a factual issue. We therefore apply the substantial evidence test—that is, we review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, resolving all conflicts and making all reasonable inferences from the evidence in favor of upholding the juvenile court's orders. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.) In doing so, we take into account the clear and convincing evidence standard—that is, we consider whether the record as a whole contains substantial evidence from which a reasonable trier of fact could have found potential detriment by clear and

11

convincing evidence. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005–1006.)

Father contends the juvenile court abused its discretion by removing Derick from his custody because there was no substantial evidence that living with father would have posed a substantial risk of harm to Derick's physical or emotional well-being. We do not agree. As DCFS notes, a child is placed at substantial risk of serious physical harm if he or she has ready access to drugs and drug paraphernalia. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1651 [leaving drug paraphernalia within child's reach indicated a gross lack of attention to the child's welfare]; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824, abrogated on other grounds in *In re R.T.* (2017) 3 Cal.5th 622, 627−630 [11–year–old subject to risk of harm if placed in home allowing access to drugs].) In the present case, father admitted that he used marijuana daily and drank alcohol regularly. Social workers who visited father's home observed a strong odor of marijuana or cigarettes throughout the house and saw a bong and an empty alcohol bottle in father's bedroom. Father said he was not willing to drug test, and he showed himself unwilling or unable to stop or reduce his use. He also appeared unconcerned by mother's drug use, as evidenced by his willingness to provide her with hydrocodone and his casual reaction—" 'everyone tries stuff once' "—when he was told mother had been using Ecstasy.

We note, moreover, a troubling pattern of domestic violence between father and his female partners, including, but not limited to, mother. As other courts have noted, "[e]ven if a child suffers no physical harm due to domestic violence, a 'cycle of violence between . . . parents constitute[s] a failure to protect [a child] "from the substantial risk of encountering the violence and

12

suffering serious physical harm or illness from it." [Citations.]'
(*In re T.V.* (2013) 217 Cal.App.4th 126, 135.)" (*In re V.L.* (2020)
54 Cal.App.5th 147, 156.)  When all of this evidence is viewed in
the light most favorable to DCFS, we conclude a reasonable trier
of fact could have found it highly probable that were Derick to be
placed with father, he would have ready access to drugs and drug
paraphernalia, and would be at substantial risk of harm by
exposure to domestic violence.

Father contends there were reasonable means by which
Derick's physical and emotional health could have been protected
in father's care, but we do not agree.  As DCFS notes, father
refused to drug test, said he could not see himself participating in
services, and did not make himself available to DCFS after an
initial interview in August.  Given father's unwillingness to work
with DCFS or to participate in services, we can conceive of no
way DCFS could have protected Derick had he been placed in
father's custody.  The juvenile court therefore did not err in
removing Derick from father's custody.

## III.
### The Juvenile Court Did Not Abuse its Discretion by Ordering that Father's Visits Be Monitored

Section 362, subdivision (d) authorizes the juvenile court to
"direct any reasonable orders to the parents" of a dependent child
as the court deems necessary and proper to ensure appropriate
care, supervision, custody, conduct, maintenance, and support of
the child.  (See also § 362, subd. (a).)  Visitation between parents
and children shall be as frequent as possible, but "[n]o visitation
order shall jeopardize the safety of the child."  (§ 362.1, subd. (a).)

" 'The juvenile court has broad discretion to determine
what would best serve and protect the child's interests and to

13

fashion a dispositional order accordingly.  On appeal, this determination cannot be reversed absent a clear abuse of discretion.' (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474; see also *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)" (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071.)

Father contends that the juvenile court abused its discretion by ordering that his visits with Derick be monitored. We do not agree.  As we have said, the juvenile court reasonably was concerned about father's drug use and domestic violence, and specifically that Derick might have access to drugs or drug paraphernalia in father's home.  It therefore ordered that father could have unmonitored visitation with Derick only after he submitted to two drug tests that either were negative or showed decreasing levels of marijuana.  In light of father's admitted daily marijuana use, conditioning unmonitored visits on father's ability to demonstrate that he was abstaining from marijuana or decreasing his marijuana use was reasonably calculated to keep Derick safe and was not an abuse of discretion.

## DISPOSITION

The jurisdictional and dispositional findings and order are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

THOMAS, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15